**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

———————————————————
                                                                :
CONGREGATION KOLLEL, INC., and    :
ZEBRA HOLDINGS II, LLC,                      :          Civ. No. 16-2457 (FLW)
                                                                :
                       Plaintiffs,                         :
                                                                :
          v.                                                   :          **OPINION**
                                                                :
TOWNSHIP OF HOWELL, N.J., and    :
HOWELL TOWNSHIP ZONING BOARD  :
OF ADJUSTMENT,                                  :
                                                                :
                       Defendants.                      :
———————————————————:

**<u>WOLFSON, District Judge</u>**:

      Plaintiffs Congregation Kollel, Inc. (the "Kollel") and Zebra Holdings II, LLC ("Zebra") (collectively, "Plaintiffs"), sought a land use permit from the Township of Howell (the "Township") and Howell Township Zoning Board of Adjustment (the "Board") (collectively, "Defendants") to build and operate a Jewish educational facility. Defendants denied Plaintiffs' application, allegedly on the grounds that the type of facility which Plaintiffs seek to erect is not permitted under the Township's Zoning Ordinance. Rather, Defendants instructed Plaintiffs to seek a variance under the applicable land use provisions of the Ordinance. While Plaintiffs applied for a variance, they also brought the instant suit challenging, *inter alia*, Defendants' denial as burdensome, discriminatory and unreasonable in violation of their constitutional rights, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C.§§ 2000c, et seq. ("RLUIPA"), the Fair Housing Amendments Act (the "FHAA"), and the New Jersey Law Against Discrimination

("NJLAD"). Indeed, underlying Plaintiffs' claims is their accusation that Defendants' land use decision was based on a religious animus towards the Orthodox Jewish faith.

In the instant matter, Defendants move to dismiss the Complaint, not based on the merits of the claims, but rather, on the doctrine of ripeness. In so moving, Defendants posit that because the variance process has not concluded, Plaintiffs' claims brought here are premature. For the reasons explained below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part; in that regard, the Court finds that Plaintiffs' federal claims, i.e., Counts I-VIII, are ripe, and with respect to state law claims asserted in Counts X and XI, the Court will exercise supplemental jurisdiction. However, Plaintiffs must exhaust their administrative remedies as to Count IX, action in lieu of prerogative writ.

## BACKGROUND

### I.     The Planned Facilities

For the purpose of this dismissal motion, the Court will only recount relevant facts from the Amended Complaint and take them as true. The Kollel is a religious organization that promotes the advancement of the Orthodox Jewish faith and Talmudic studies. Compl., ¶ 12. Currently, the Kollel owns and operates a higher Talmudic academy in Lakewood, New Jersey, which has been in existence since 2005. In 2014, to expand its educational facilities, the Kollel decided to include a *mesivta*[1] and a *yeshiva gedola*.[2]  *Id.* at ¶ 26. According to the Kollel's plans, there would be 30 students in each year of the three-year program at the *yeshiva gedola*, for a total of 90 students, who would live in

---

[1]     A *mesivta* is a religious educational facility that emphasizes Talmudic studies for students that are of post-bar mitzvah age. Compl., ¶ 27.

[2]     The Kollel's planned *yeshiva gedola* is a religious educational facility for Talmudic studies for undergraduate-level students, between the ages of 18-22. Compl., ¶¶ 28, 34.

2

dormitories on-site, *id.* at ¶ 36, and there would be ten to thirteen full and part-time faculty members. *Id.* at ¶ 45. The hours of operation of the school would be from 7:45 a.m. to 9:00 p.m., seven days a week. *Id.* at ¶ 49. Importantly, the planned *yeshiva gedola* would house no separate synagogue and no worship services would be advertised. *Id.* at ¶ 51.

Because the Lakewood academy is at its capacity, in Spring 2015, the Kollel determined that it would seek to expand its facilities in the Township of Howell. Compl., ¶ 73. The Kollel proposes to construct a two-story, 17,240 square foot classroom building, with a basement, in which to conduct Jewish studies; a two-story 19,186 square foot dormitory building with a basement; and seven attached two-story townhouses to be used for faculty housing. *Id.* at ¶ 98. A paved driveway will provide access to the site, and 41 off-street parking spaces are proposed. *Id.* at ¶ 99. Pursuant to that endeavor, Plaintiff Zebra[3] purchased a 10.1-acre property located at 344 Ford Road[4] in the Township (the "Ford Property"),[5] which is located within the "ARE-2" Zone. *Id.* at ¶ 79. According to Plaintiffs, at the time the Ford Property was purchased, and until 2016, "educational facilities" were a use permitted by right within the ARE-2 Zone in the Township. *Id.* at ¶ 80. And, the Property as proposed would be in character with the surrounding

---

[3]      In their Original Complaint, Plaintiffs improperly pled Zebra Holdings II, LLC as Zebra Holdings, LLC. Plaintiffs corrected this mistake in their Amended Complaint.

[4]      Currently, the Ford Property is improved with a split-level single family residence, a stone/gravel driveway, a wood deck and above-ground swimming pool and a large chicken coop. *Id.* at ¶ 78.

[5]      According to the Complaint, the Kollel has a contract to purchase the Ford Property from Zebra. *Id.* at ¶ 76.

neighborhood, which consists of residential, institutional, agricultural and nearby commercial land uses.[6]  *Id.* at ¶ 83.

## II.    The Township's Local Land Use Ordinance

The use of the Ford Property is subject to the Zoning Ordinance of the Township. Section 188-50 of the Ordinance, entitled "Conformity to regulations required" provides, "[n]o lands, lot or premises and no building or structure shall be used for any purpose other than those permitted by Articles VIII through XI for the zone in which it is located." Compl., ¶ 102.   Under the ARE-2 Zone, permitted principal uses as of right include agricultural uses, single-family residential, municipal buildings, public recreation, group homes and educational facilities.[7]  *Id.* at ¶¶ 103-04.  In addition, permitted accessory uses in that zone include "Accessory uses customarily incidental and ancillary to a permitted use" and "Home occupations."  *Id.* at ¶ 105.  Permitted conditional uses are: House of worship; community residences for the developmentally disabled and community shelters for victims of domestic violence that contain more than six and fewer than 15 occupants; and solar energy general facility.  *Id.* at ¶ 106.  Plaintiffs claim that their "proposed use is an educational facility."  *Id.* at ¶ 110.

---

[6]    More specifically, Plaintiffs list the following educational institutions that are purportedly located in the Township's ARE-2 zoning district: Lil' achievers Early Childhood Center; Howell North Middle School; Howell Memorial Middle School; Ardena School; Griebling School; Greenville School; Ramtown School; Howell Middle School South; and the Coastal Learning Center.

[7]    On March 20, 2007, the Township adopted Ordinance No. O-07-09, which permitted "Educational facilities" as a principal permitted use in the ARE-2 Zone.  Compl., ¶ 107. According to Plaintiffs, the Township made this amendment because, in 2006, the Township was seeking funding for educational facilities from the State.  *Id.* at ¶ 112.

Because the term "Educational Facility" is not defined by the Ordinance, as a proposed definition, Plaintiffs cite to the New Jersey Educational Facilities Authority, N.J.S.A. 18A:72A-1, *et seq.*, which provides in relevant part:

> a structure suitable for use as a dormitory, dining hall, student union, administration building, academic building, library, laboratory, research facility, classroom, athletic facility, health care facility, teaching hospital, and parking maintenance storage or utility facility and other structures or facilities related thereto or required or useful for the instruction of students or the conducting of research or the operation of an institution for higher education, and public libraries, and the necessary and usual attendant and related facilities and equipment, but shall not include any facility used or to be used for sectarian instruction or as a place for religious worship[.]

N.J.S.A. 18A:72A-3.  The same provision defines a "Dormitory" as "a housing unit with necessary and usual attendant and related facilities and equipment, and shall include a dormitory of a public or private school, or of a public or private institution of higher education."  *Id.*  Plaintiffs contend that dormitories are educational facilities under the State's definition.

**III.    The Kollel's Land Use Application**

In accordance with the Township's Zoning Ordinance, on August 19, 2015, the Kollel filed a Land Use Permit Application and concept plan with the Township, Department of Community Development and Land Use, seeking confirmation that the Kollel's proposed educational facility is a permitted use within the ARE-2 Zone as set forth in Section 118.69.1B(1)(b).  Compl., ¶ 159.  At the end of that month, the Township's Director of Land Use denied the application, determining that the while the non-residential component of the proposed project was permitted, the student and faculty housing are not. *Id.* at ¶ 161.  Moreover, the Director determined that it is not permissible to erect four principal structures as set forth by Plaintiffs' concept plan.  *Id.* at ¶ 164.  Rather, only one

structure is permitted on a lot.  *Id.*  As a result of the denial, the Director indicated that the Kollel must apply for a variance before the Township's Board of Adjustment.

On September 18, 2015, pursuant to N.J.S.A. 40:55D-70a and 72a, the Kollel filed an appeal of the August 31, 2015 decision to the Board on the basis that student and faculty housing is part of the principal educational facility use of the Ford Property.  Alternatively, Plaintiffs propose that such housing is a permitted accessory use of the Property, and that the planned four structures on the property constitute a permitted institutional building complex.[8]  *Id.* at ¶ 171.  The Board scheduled a public hearing on December 21, 2015.  *Id.* at ¶ 184.  The Kollel presented one witness at that hearing, Zev Rothschild, the President of the Kollel, to describe the proposed educational facility use.  *Id.* at ¶ 185.  According to Plaintiffs, the Board and its professionals were "irrationally hostile to the religious nature of the proposed use, attempting to describe the use as a 'synagogue' rather than an educational facility, which further demonstrated hostility toward the ultra-Orthodox character of the [] Kollel."  *Id.* at ¶ 187.  Plaintiffs further allege that the Board permitted various members of the public to question the witness for the Kollel, despite the fact that the Board was only ruling on a legal determination as to whether use was permitted in the ARE-2 Zone.  *Id.* at 194.  The public, Plaintiffs aver, was significantly hostile towards the Kollel and its application.  *Id.* at ¶ 195.

The Board held a second hearing on February 29, 2016.  At this hearing, the Kollel presented the testimony of its professional planner, Andrew Janiw, to further explain the use and the proposed student and faculty housing.  *Id.* at ¶¶ 204-05.  Plaintiffs allege that

---

[8]     As alternative relief, the Kollel applied for a variance pursuant to N.J.S.A. 40:55D-70c.  Compl., ¶ 172.  That application is still pending.

6

the Board exhibited the same hostility towards Janiw, "based specifically on the religious nature of [the Ford Property's] use."[9]  *Id.* at ¶ 206.  According to Plaintiff, Janiw was subjected to contentious and inappropriate questioning by the Board and its Planner, which demonstrated the Board's "animus toward ultra-Orthodox Jews." *Id.* at ¶ 224.

On March 28, 2016, the Board unanimously voted to uphold the Director's denial, and issued a Memorialization of Resolution.  In its Resolution, the Board reasoned that the State's definition of "Educational Facility" that the Applicant sought to apply, "although broadly permitting dormitories and structures relating to the operation of such facilities, specifically excludes 'any facility used or to be used for sectarian instruction or as a place of religious worship.'"  Resolution, dated March 28, 2016, p. 6.  The Board also rejected the Kollel's application on the basis that the proposed dormitories and faculty housing are not customary and incidental to an educational facility, and it is a "matter of semantics in referring to the project as an educational facility." *Id.* at p. 7.  Indeed, according to the Board, proposed dormitories are not permitted in ARE-2 Zone in the Township, *see id.* at p. 8, nor do they fit within the exception as a public or institutional building complex. Ultimately, the Board determined that "the proposal essentially consisted of a school, with multi-family structures for students, and faculty and their families, which is clearly prohibited in" in the ARE-2 Zone.  *Id.* at p. 10.

On January 25, 2016, "Educational Facility" was removed as a permitted use within the ARE-2 Zone by the Township.  Compl., ¶ 120.  According to Plaintiffs, the Township adopted this amendment after Plaintiffs had applied for zoning approval because it was

---

[9]    Plaintiffs state in their Complaint that the Kollel would forego the faculty, but not the student, housing if that was required to have the project approved.  *Id.* at ¶ 213.

motivated by a religious animus towards ultra-Orthodox Jews in general, and Plaintiffs in particular. *Id.* at ¶¶ 121-23.

## IV.     The Amended Complaint

Before the variance process concluded, in July 2016, Plaintiffs filed the instant suit, asserting eleven causes of action.  Count I – Count IV assert that Defendants violated the RLUIPA by illegally imposing land use regulations both on their face and as applied in a manner that violates Plaintiffs' religious exercise without using the least restrictive means of achieving a compelling governmental interest. Compl., ¶¶ 303-309.  Specifically, under RLUIPA, Count I asserts that Defendants substantially burdened Plaintiffs' religious rights. On the same statutory basis, Count II accuses Defendants of discriminating against Plaintiffs on the basis of religion and religious denomination.  *Id.* at ¶ 305.  In addition, Count III alleges that Defendants' implementation of the Township's regulations in a manner that "religious land uses them on terms that are less than equal to nonreligious assembly and institutional land uses."  *Id.* at ¶ 307.  Finally, Plaintiffs, in Count IV, aver that Defendants' land use determinations have totally excluded Plaintiffs' "religious assembly from within the jurisdiction" in violation of RLUIPA.  *Id.* at ¶ 309.

Furthermore, Plaintiffs allege that Defendants' conduct violated Plaintiffs' rights under: the FHAA (Count V); the First Amendment Free Exercise of Religion (Count VI), and Freedom of Speech (Count VIII); Fourteenth Amendment's Equal Protection clause (Count VII); the NJLAD (Count X); and New Jersey Constitution's Art. 1 ¶¶ 1, 3 (Count XI).  In addition to the aforementioned causes of action, Plaintiff seeks a prerogative writ under N.J.S.A. § 40:55D-1, *et seq*. (Count IX).  In connection with these Counts, Plaintiffs

ask for declaratory and injunctive relief, including the reversal of the decision of the Board, compensatory damages, costs and attorney's fees.

In the instant matter, Defendants move to dismiss Plaintiffs' Complaint on the basis that Plaintiffs' federal claims are not ripe for this Court's disposition.  In particular, Defendants posit that, because the variance process has not concluded, there exists no actual case or controversy.  I stress that Defendants did not move to dismiss Plaintiffs' Complaint based on sufficiency of the pleadings.  Therefore, the main question I am called upon to decide is whether the doctrine of ripeness applies to preclude Plaintiffs' federal claims at this time.

## DISCUSSION

### I.     Standard of Review

To begin, when considering challenges to ripeness under Rule 12(b)(1), courts apply the same standards that are used to resolve a motion under Rule 12(b)(6). *See Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 352 (D. Del. 2009). In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); see also Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing

the pleader is entitled to relief"). In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Plaintiff need not meet any particular "probability requirement" but must show that there is "more than a sheer possibility that the defendant has act unlawfully." Id. (citing Twombly, 550 U.S. at 556). Moreover, "context matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).

When presented with a motion to dismiss, the court should engage in a two-part analysis. Fowler, 578 F.3d at 210. First, the court must separate the factual and legal elements of each claim. Id. It "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 556 U.S. at 667). Second, the court must determine whether the facts alleged are "sufficient to show that the plaintiff has 'a plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's

entitlement to relief;" it must "'show' such an entitlement with its facts." <u>Fowler</u>, 578 F.3d at 211 (citing <u>Phillips</u>, 515 F.3d at 234-35); <u>see</u> <u>Covington v. International Ass'n of Approved Basketball Officials</u>, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' … The pleading standard 'is not akin to a 'probability requirement," … to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (Citations omitted)).

## II.     Ripeness

As a general matter, ripeness is a jurisdictional inquiry, rooted in both the case or controversy requirement of our Constitution's Article III and judge-made prudential limitations on the exercise of judicial authority. *Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 Fed. Appx. 214, 216-17 (3d Cir. 2009); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n.7 (1997)). The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977); *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998). Ripeness, therefore, is "peculiarly a question of timing" as cases may later become ready for adjudication even if deemed premature on initial presentation. *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974).

"Determining whether a case is ripe requires [courts] to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Murphy*, 402 F.3d at 347 (citing *Abbott Labs.*, 387 U.S. at 149). Indeed,

11

this two-prong inquiry incorporates both the doctrine's Article III and prudential implications. The "fitness of the issues for judicial decision" prong recognizes the restraints Article III places on federal courts. It requires a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development. *See, e.g., Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 25 (1985). The "hardship-to-the-parties" prong clearly injects prudential considerations, "requiring courts to gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined." *Murphy*, 402 F.3d at 347 (citing *Abbott Labs.*, 387 U.S. at 149).

The Supreme Court first developed specific ripeness requirements for land use disputes in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). The Court devised a two-prong test for determining ripeness in the context of land-use disputes. The first prong requires that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. The second prong requires that the plaintiff must have exhausted the state's procedures for obtaining just compensation for a taking. *Id.* at 194-95. While *Williamson* involved a challenge to a regulatory taking, subsequent Third Circuit decisions have applied this ripeness reasoning to land use disputes involving other constitutional claims. *See, e.g., Congregation Anshei*, 338 Fed. Appx. at 217 (citing *Murphy*, 402 F.3d at 350) (Free Exercise Clause and RLUIPA claims); *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1291 (due process and equal protection action under 42 U.S.C. § 1983); *County Concrete Corp. v. Township of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (substantive due process and equal protection claims). Because constitutional claims in these cited-cases do not involve just

compensation, the second prong of *Williamson* does not apply.  *See Murphy*, 402 F.3d at 349; *Taylor Inv.*, 983 F.2d at 1291 (applying only the first prong of *Williamson*'s ripeness test to as-applied substantive due process and equal protection claims); *Congregation Anshei*, 338 Fed. Appx. at 217 (applying only *Williamson*'s first prong to RLUIPA claims).

Analysis under the first prong of *Williamson* ensures that a claim is ripe because "[o]nly once a 'decision maker has arrived at a definitive position on the issue' has a property owner been inflicted with 'an actual, concrete injury.'" *County Concrete*, 442 F.3d at 159 (quoting *Williamson*, 473 U.S. at 192). The Third Circuit has advised that federal courts should not "become super land-use boards of appeals" because "[l]and-use decisions concern a variety of interests and persons" and "local authorities are in a better position than the courts to assess the burdens and benefits of those varying interests." *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 598 (3d Cir. 1998).

The Third Circuit has explained that that the finality requirement of the ripeness inquiry: "(1) aids in the development of a full record; (2) provides the court with knowledge as to how a regulation will be applied to a particular property; (3) may obviate the need for the court to decide constitutional disputes if a local authority provides the relief sought; and (4) shows the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."  *Congregation Anshei*, 338 Fed. Appx. at 217 (citing *Murphy*, 402 F.3d at 348) (internal citations omitted).

Because the Court must undertake the ripeness inquiry as to each claim asserted in the Complaint, I will address Plaintiffs' claims separately, below.

13

### A.  The RLUIPA claims

In Counts I – IV, Plaintiffs accuse Defendants of violating RLUIPA by illegally imposing land use regulations both on their face and as applied in a manner that violates Plaintiffs' religious exercise without using the least restrictive means of achieving a compelling governmental interest.  RLUIPA, "'the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burden,'" addresses, among other things, land use regulations. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 261 (3d Cir. 2007) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). The land-use section of the statute is divided into two subsections, which provide:

(a) Substantial burdens.

   (1) General rule.
   No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--

      (A) is in furtherance of a compelling governmental interest; and

      (B) is the least restrictive means of furthering that compelling governmental interest.

   . . .

(b) Discrimination and exclusion.

   (1) Equal terms. No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

   (2) Nondiscrimination. No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

(3) Exclusions and limits. No government shall impose or implement a
land use regulation that--

(A) totally excludes religious assemblies from a jurisdiction; or

(B) unreasonably limits religious assemblies, institutions, or
structures within a jurisdiction.

42 U.S.C. § 2000cc(a), (b).   "The use, building, or conversion of real property for the
purpose of religious exercise shall be considered . . . religious exercise." *Id.* § 2000cc-
5(7)(A), (B).

### 1.  Facial Challenge

Before examining the ripeness of the RLUIPA claims, I first address Plaintiffs'
assertion of a facial challenge to the Zoning Ordinance at issue.   Plaintiffs spent a
significant portion of their opposition brief explaining that their Complaint contains several
facial challenges to the Zoning Ordinance.   Essentially, underlying Plaintiffs' challenge is
their contention that, because Defendants' Resolution established that Plaintiffs' proposed
religious educational facility, i.e., the *mesivta* and *yeshiva gedola*, is not permitted under
the Zoning Ordinance, boarding schools are effectively prohibited throughout the
Township.   Based on that argument, Plaintiffs claim, for example, that Defendants violated
RLUIPA because they precluded the Kollel's religious land use throughout the jurisdiction,
which amounts to a total exclusion of the use and a substantial burden on the Kollel's
religious exercise.[10]   I disagree.

---

[10]      In their Complaint, Plaintiffs reference Ordinance No. O-14-13, adopted by the
Township on May 20, 2014, which prohibited "schools with state-approved curricula" as
a permitted or conditional use within the ARE-2 zoning district.   The Ordinance also
prohibited outright any "school", as defined by the Ordinance, from having dormitory
housing, as well as imposed a requirement that those schools be licensed by State of New
Jersey.   Compl., ¶¶ 137-41.   However, because Plaintiffs applied for their land use permit
before the Board as an "Educational Facility" in ARE-2 Zone, on this motion, the Court

I note that because I find Plaintiffs' claims are ripe on other grounds, *see infra*, I will not exhaustively address Plaintiffs' facial challenge arguments. But, suffice it to say, the challenges Plaintiffs advance with regard to the Zoning Ordinance are more appropriately categorized as "'as-applied" challenges.  A party asserting a facial challenge "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question.'" *CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.*, 703 F.3d 612, 624 (3d Cir. 2013) (quoting *City of Chi. v. Morales*, 527 U.S. 41, 55 n.22 (1999)); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016).  In mounting a facial challenge, the plaintiff does not seek to establish that the law cannot be applied to him or her; rather, he or she must demonstrate that "no set of circumstances exists under which the [challenged] Act would be valid."  *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Because of the broad nature of facial challenges, the Supreme Court has repeatedly admonished that they are disfavored and should be considered sparingly. *See, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  This is so because facial challenges seek to completely invalidate a law and because a ruling on the constitutionality of all possible applications of a statute necessarily "rest[s] on speculation" and invites the "premature interpretation of statutes." *Id.* (internal citations omitted); *CMR*, 703 F.3d at 624.

Here, Plaintiffs' claims do not meet these criteria or otherwise resemble a facial attack on the Zoning Ordinance.  First, as a general matter, Plaintiffs' entire theory of the

---

will solely focus on this basis as it relates to Plaintiffs' constitutional challenges.  *See* Plaintiffs' Opp. Br., p. 32 (stating that as it relate to Ordinance O-14-13, "the Court need not reach this issue, as the Kollel's use is permitted as an "Educational Facility.").

case, at its core, is that Defendants' erroneous interpretation of the term "Educational Facility" as set forth in Section 118-69.1B(1)(b) of the Zoning Ordinance, and the attendant accessory uses, was religiously motivated.  Indeed, nowhere in Plaintiffs' Complaint do they claim that the enactment of the Zoning Ordinance, as a whole, could not be constitutionally applied to any property.  Second, Plaintiffs do not assert that Defendants' interpretation of "Educational Facility" cannot be constitutionally applied under any circumstances.  Instead, Plaintiffs' religious-related claims refer to how Defendants' decision on Plaintiffs' land use application, alone, violates RLUIPA and Plaintiffs' constitutional rights.  *See, e.g.*, Compl., ¶¶ 166-67 (Defendants' determinations "were motivated by hostility toward ultra-Orthodox Jews" and they were made "during a time of significant hostility toward ultra-Orthodox Jews from the Howell Township community."); ¶ 234 ("The Board also concluded that a dormitory was a 'multi-family structure' . . . despite the clear inconsistency of this conclusion with the Township's [Zoning Ordinance]."); ¶ 237 ("The Board's determination that the dormitory component of the proposed use was a 'multi-family structure' was substantially motivated by hostility and animus toward ultra-Orthodox Jews."); ¶ 242 ("The Board's determination that the proposed use was not an institutional building complex resulted from the Board's responsiveness to the local Howell Township community, which possesses substantial hostility and animus toward ultra-Orthodox Jews."); ¶ 253 ("The Board's attempt to re-define the Plaintiffs' proposed educational facility as, alternatively, a 'synagogue,' 'multi-family housing,' and a 'school,' despite the clear inconsistency between the proposed use and such other uses, was motivated by hostility and animus toward ultra-Orthodox Jews."). Importantly, no allegation in the Complaint explains why the ordinance cannot be

constitutionally applied under any circumstance; in fact, to the contrary, Plaintiffs aver that Defendants' reasoning in denying them the land use permit is inconsistent with the Zoning Ordinance. *See id.* at ¶ 237; *see Free Speech Coalition, Inc. v. AG United States*, 825 F.3d 149, 168 (3d Cir. 2016) ("facial challenge attacks the statute itself, not a particular application . . . ." (citations and quotations omitted)); *Mitchell*, 652 F.3d at 405 ("[a] party asserting a facial challenge to a statute's constitutionality must show that the statute is unconstitutional in all of its applications." (internal quotations and citation omitted)). Based on the Complaint, I find that Plaintiffs have characterized this case as seeking to vindicate their own rights, not the rights of others, and therefore, I do not find that Plaintiffs are facially challenging the Zoning Ordinance.

Nevertheless, I find Plaintiffs' RLUIPA claims are ripe based on other grounds.  I turn, next, to that discussion.

### 2.   Plaintiffs' RLUIPA Claims are Ripe

Defendants argue that Plaintiffs' federal claims, including those raised pursuant to RLUIPA, are not ripe.  In so arguing, Defendants primarily focus on the Second Circuit's decision in *Murphy* and the Third Circuit's opinion in *Congregation Anshei*.  According to Defendants, based on the reasoning in those decisions, the Board's denial here cannot be construed as final, because Plaintiffs could have obtained adequate relief by means of a use variance.  Defendants maintain that Plaintiffs would not be irreparably harmed by proceeding with a variance hearing.  I do not find Defendants' position in this regard persuasive, and to address their arguments, I turn to the relevant case law.

In *Murphy*, a homeowner couple, who held prayer group meetings in their home, received a cease and desist order from their local land use authority. Without appealing the

decision to the local zoning board, the Murphys filed suit under RLUIPA. On appeal, the town argued that the Murphys' claims were not ripe. Examining this issue, the Second Circuit discussed the Supreme Court's decision in *Williamson*. *Murphy*, 402 F.3d at 348-49. As explained above, the Second Circuit adopted *Williamson*'s finality rule in the context of RLUIPA, which has been similarly adopted by the Third Circuit, and employed a two-step inquiry to determine whether a land use decision is final. At the first step, the circuit court examined whether the town's action had inflicted an immediate injury on the plaintiffs. *Id.* at 150. The court answered the question in the negative, reasoning:

> To support their contention on this point the Murphys assert that New Milford could have enforced the cease and desist order through civil fines and imprisonment, as provided for in Connecticut General Statutes section 8-12. This statute, however, does not provide New Milford with any arresting or fining power. Rather, section 8-12 merely provides a procedure whereby New Milford would be required to bring an action in Connecticut Superior Court to enforce the order. Under the statute the award of fines and imprisonment can occur only after a legal proceeding is filed (a step never taken here), zoning violations are proven and the trial court -- in exercising its discretion -- believes that penalties are necessary to deter future violations. New Milford, then, plainly lacked the enforcement authority on which the claim of immediate hardship is premised.

*Murphy*, 402 F.3d at 351. The court then found that the Murphys could not have claimed an immediate injury, because an appeal to the local zoning board would have stayed the enforcement of the cease and desist letter. *Id.*

In the next step, the court analyzed whether the existing record clearly defined the plaintiffs' injury. *Id.* Ultimately, the court found that "the resolution of the constitutional and statutory claims . . . hinge[s] on factual circumstances not yet fully developed." *Id.* In brief, the Second Circuit found a large number of unanswered factual questions in the case, and concluded that an appeal to the zoning board would have likely produced a record more conducive to resolution of the issues at hand, particularly since the zoning board would

have held a hearing "to find facts and to apply the pertinent zoning regulations." *Id.* at 351-52.

Applying *Murphy*'s two step-inquiry, the Third Circuit, in *Congregation Anshei*, found that a RLUIPA claim was not ripe until the plaintiff synagogue had applied for a variance and the zoning board had issued a definitive decision on that application.  In *Congregation Anshei*, plaintiff synagogue was constructed before the defendant borough adopted any zoning regulations, but subsequent zoning ordinances designated the area in which houses of worship are permitted as a conditional use.  *Congregation Anshei*, 338 Fed. Appx. at 215.  Because the synagogue was a pre-existing structure, it continued its operation notwithstanding the failure to comply with an after-enacted zoning ordinance. *Id.*  Thereafter, the plaintiff entered into a contract with a Yeshiva that allowed the Yeshiva to conduct study and worship activities on the property.  After a resident complained to the borough, a zoning officer found that the Yeshiva's use was permitted as it fell within the existing synagogue use.  *Id.*  That decision was appealed to the zoning board and the board held public hearings.  After its deliberation, the board adopted a resolution overturning the decision of the zoning officer.  The board found that a Yeshiva can be a synagogue but "the problem is that from a land use perspective, Yeshiva has resulted in a significant increase in the intensity of the use," and that "[a] variance is necessary since the Yeshiva is an expansion of an already nonconforming use."  *Id.* at 216.  Without applying for a variance, the plaintiff filed suit in federal court.

The parties, before the Third Circuit, argued whether the board had made a final determination, consistent with *Williamson*'s finality rule.  *Id.* at 217.  The Third Circuit found that the board had not entered a final determination, because the plaintiff's

argument "is based on the mistaken belief that the Board determined that the Yeshiva was not a permitted use. It did not do so. Instead, the Board determined that it may be accurate that the Yeshiva is a function of a house of worship, but the problem was that it resulted in a significant increase in the intensify of that use, and therefore, a variance was necessary to consider the effect on the neighborhood." *Id.* In so finding, the Third Circuit stressed that "the Board did not determine that the Yeshiva was not a house of worship and thereby a violation of the ordinance. The Board's resolution speaks only to its determination that the Yeshiva represents an intensification of use requiring a variance." *Id.* Hinged upon this distinction, the Third Circuit explained that "the factual record is not sufficiently developed to decide fully the RLUIPA claim . . . . If the Congregation . . . appl[ies] for a variance, the Board would develop a record to determine the potential effect of the use, and whether (and, if yes, to what extent) the use is permitted." *Id.* at 218. Moreover, the Third Circuit found that the plaintiff had not suffered any immediate injury because "it appears the Yeshiva is still operating at the synagogue." *Id.* at 219.

Here, relying on *Murphy* and *Congregation Anshei*, Defendants argue that Plaintiffs should be directed to apply for a variance before Plaintiffs' claims are ripe. Defendants reason that there is a clear benefit in having the Board determine whether Plaintiffs satisfy the criteria for a use variance, which would provide Plaintiffs with all or some of the relief that they requested, and would result in the development of a full administrative record on the variance issue. I find Defendants' arguments misplaced in light of the Third Circuit's decision in *Congregation Anshei*.

At the outset, I note that although the Third Circuit in *Congregation Anshei* did not explicitly adopt the Second Circuit's two-step approach in *Murphy*, the court

21

nevertheless based its decision on the questions of: (1) whether an immediate injury had been sustained; and 2) whether further development of the factual record would result in improvements in the administration of justice.

I first examine the nature of Plaintiffs' RLUIPA claims.  As I have discussed, *supra*, each of Plaintiff's RLUIPA claim is based on the Board's interpretation of "Educational Facility" and the attendant "Accessory Uses" in the Zoning Ordinance, and the Board's determination whether Plaintiffs' proposed use is a permitted use in light of those interpretations.  *See* Compl., ¶ 303 ("Defendants have deprived and continue to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations . . . that places substantial burden on Plaintiffs religious exercise without using the least restrictive means of achieving a compelling governmental interest." (Count I)); ¶ 305 (alleging that Defendants have deprived Plaintiffs' of their right to the free exercise of religion by discriminating against them on the basis of religion in violation of RLUIPA (Count II)); ¶ 307 (alleging that Defendants have deprived Plaintiffs of their right to the free exercise of religion by applying land use regulations on terms that are less than equal to nonreligious assembly and institutional land uses (Count III)); ¶ 309 (alleging that Defendants have deprived Plaintiffs of their right to religious freedom by implementing land use regulations in a manner that totally excludes their religious assembly from within the jurisdiction (Count IV)).

Indeed, under the land use statutory scheme in New Jersey, the Board possesses the authority to hear appeals by an interested party who had been affected by any decision of an administrative officer of a municipality.  *See* N.J.S.A. 40:55D-70a and -72a.  The

Board is also tasked with the final authority to interpret a zoning ordinance.  *See id.* at 70b.  In this case, to make its determinations, the Board held two public hearings, wherein the Board heard testimony from expert witnesses — presented by both parties — who testified extensively as to the nature of the use proposed by Plaintiffs.  Indeed, the Board heard testimony regarding, *inter alia*, (1) the *yeshiva gedola*'s educational program; (2) the manner in which Plaintiffs intended to run such a program, including the number of students and staff, and the hours of operation; (3) various religious uses of the property; (4) the definition of "Education Facility" as defined by the State of New Jersey and other municipalities; and (5) the "accessory use" and "institutional building complex" exception under the Zoning Ordinance.  Furthermore, the Board also heard public objections by allowing the Township's residents to voice their strong disagreements with Plaintiffs' proposed project.

Armed with the information from the hearings, the Board found that, while the non-residential component of Plaintiffs' proposed use was permitted, the proposed dormitories and staff housing are not permitted in the ARE-2 Zone in the Township, nor do they fit within the exception as a public or institutional building complex.  Rather, the Board determined that the proposal essentially consisted of a school, with multi-family structures for students, and faculty and their families, which is prohibited in the ARE-2 zone.

Defendants argue that Plaintiffs must apply for a variance so that this Court would have a fuller factual record.  I disagree, because I find that the Board has already rendered its final decision.  In *Congregation Anshei*, while the Third Circuit held that in order for the plaintiff's RLUIPA claims there to be ripe, the plaintiff must apply for a variance so

that the board could issue a definitive position as to the extent the Yeshiva could operate on the synagogue's property.  *Congregation Anshei*, 338 Fed. Appx. at 219.  In that regard, the board would develop a factual record to determine the potential effect of the use and whether the use is permitted under the zoning scheme.  *Id.*  Here, the facts are clearly distinguishable.  The Board rendered a definitive decision that Plaintiffs' proposed use of an "Educational Facility" is not a permitted use.  On that issue, no further development of the factual record is necessary, since the Board considered substantial evidence and came to its conclusion that Plaintiffs' proposed use of the Ford Property is inconsistent with the Zoning Ordinance.  As the Third Circuit explained, the board, in *Congregation Anshei*, did not make a determination that the Yeshiva in that case was a permitted use. Rather, the board found that the Yeshiva is indeed a function of a house of worship — a conditional use in the zone — and that the variance process was necessary to consider the effect on the neighborhood.  *Id.* at 216.  This distinction is significant in this case, because the Board, here, made a final determination that Plaintiffs' proposed use was *not* a permitted use as an "Educational Facility."  Indeed, in asking Plaintiffs to apply for a variance, the Board would not be developing additional factual record on that already-decided issue.  Instead, the variance process, in this case, would only seek to determine whether Plaintiffs' proposed use could be permitted by the Board to depart from the Ordinance's requirements.  *See Puleio v. North Brunswick Tp. Bd. of Adjustment*, 375 N.J. Super. 613, 619 (App. Div. 2005).  Accordingly, I find that no further record is necessary.

I also find that based on Plaintiffs' theory of liability under RLUIPA, Plaintiffs have suffered an immediate injury.  This element is easily satisfied since Defendants,

based on Plaintiffs' allegations, were motivated by a religious animus to deprive Plaintiffs of their right to free exercise of religion by imposing land use regulations that violate multiple sections of RLUIPA.  If true, Defendants' alleged discriminatory conduct has caused an immediate and tangible injury; in that, Plaintiffs were prevented from erecting a *yeshiva gedola* and *mesivta* on the Ford Property.  In that regard, to subject Plaintiffs to an additional variance process would only seek to amplify the harm.  *See Israelite Church of God in Jesus Christ, Inc. v. City of Hackensack*, No. 11-5960, 2012 U.S. Dist. LEXIS 112793, at *10-11 (D.N.J. Aug. 10, 2012)(finding that the complaint alleges an immediate injury under the *Williamson* finality requirement, because it contains facts which support a finding that the plaintiff church's religious rights were burdened by the defendant's land use decision).  In conclusion, I find Plaintiffs' RLUIPA claims are ripe.[11]

### B.  Fair Housing Amendments Act Claim

In Count V, Plaintiffs allege that Defendants have intentionally discriminated against Plaintiffs by making housing unavailable within the Township in violation of the FHAA, 42 U.S.C. § 3604(a).  Indeed, FHAA makes it unlawful to refuse to sell or rent, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin. 42 U.S.C.S. § 3604(a).  Without regard to whether Plaintiffs have successfully pled a FHAA claim, Defendants argue that this claim is not ripe as strong federal policy considerations require this Court to defer to the final decision-making responsibilities of the local governmental authorities.  In support of their

---

[11]      I note that both parties' briefing presented merit-based arguments that are more appropriate for a motion to dismiss for failure to state a claim or for summary judgment. Because, on this motion, I am only deciding issues related to ripeness, I make no comments on the sufficiency of Plaintiffs' pleadings or whether Plaintiffs' claims ultimately have merit.

position, Defendants refer this Court to the Third Circuit's decision in *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442 (3d Cir. 2002). But, that case did not deal with ripeness issues in the context of the FHAA. In fact, in that opinion, the Third Circuit specifically stated that it was "not presented with and [did] not reach questions of ripeness or exhaustion . . . ." *Id.* at 452 n.5. Rather, the Third Circuit determined that "courts hearing reasonable accommodations challenges [in the context of FHAA] should ordinarily limit their review to the administrative record" developed before the local land use boards. *See id.* at 451.

I note that although the Third Circuit did not decide any ripeness issues in *Lapid-Laurel*, the court did, however, explain approvingly the Seventh Circuit's approach to determine ripeness questions in the context of FHAA. *See id.* at 452 n.5. In *United States v. Village of Palatine*, 37 F.3d 1230 (7th Cir. 1994), the Seventh Circuit reviewed an FHAA reasonable accommodations challenge to a local ordinance for which the plaintiff had not sought a variance. While the court there held that the claim was not ripe, and that in general, a city must be afforded the opportunity to make the requested accommodation, *see id.* at 1233, the court, nevertheless, limited that ripeness rule to reasonable accommodations claims, and noted that "if the plaintiff's claim were of discriminatory intent, rather than failure to make a reasonable accommodation, the claim might well be presently ripe even though [the plaintiff] has not sought a special use approval." *Id.* at 1233 n.3.

Here, Plaintiffs' FHAA claims are discrimination-based, i.e., religious animus. Thus, once the Board has allegedly made the discriminatory decision that Plaintiffs' proposed use is not a permitted use under the Zoning Ordinance, Plaintiffs' FHAA claim became ripe, and Plaintiffs are not required to seek a variance before bringing that claim.

*See id.* at 1233 n.3; *Oxford House-A v. City of Univ. City*, 87 F.3d 1022, 1024-25 (8th Cir. 1996); *Torres v. Franklin Twp.*, No. 09-6282, 2011 U.S. Dist. LEXIS 148296, at *5 (D.N.J. Dec. 22, 2011) ("while most [FHAA] reasonable accommodations claims must first be presented to local land use boards, claims of discriminatory intent or discriminatory impact are ripe even where approvals have not been sought." (citations and quotations omitted)); *United States v. City of New Orleans*, No. 12-2011, 2012 U.S. Dist. LEXIS 173177, at *3, *5 (E.D. La. Dec. 6, 2012) (holding that intentional discrimination claim under FHAA ripe even though city defendant ultimately granted the variance).

### C. § 1983 Claims

In Counts VI – VII, Plaintiffs assert § 1983 claims under the First Amendment Free Exercise and Equal Protection Clauses of the Constitution.  As I discussed, *supra*, the Third Circuit has incorporated the *Williamson* finality rule to these types of constitutional claims. *See  Congregation Anshei*, 338 Fed. Appx. at 217 (adopting the *Williamson* finality rule to Free Exercise Clause); *Taylor Inv.,*, 983 F.2d at 1291 (applying the finality rule to equal protection claims under § 1983).  Therefore, for the same reasons why Plaintiffs' RLUIPA claims are ripe, Counts VI and VIII are also ripe for litigation.

In Count VIII, Plaintiffs assert a First Amendment Free Speech claim.  Plaintiffs allege that in the absence of objective criteria and the definition of the term "Educational Facility," Defendants were "unconstitutionally afforded unbridled discretion during their review of the Plaintiffs' application to build and operate a *mesivta* and *yeshiva gedola*" on the Ford Property.  Compl., ¶ 322.  In that regard, Plaintiffs allege that the manner in which Defendants have applied the Zoning Ordinance "constitutes an impermissible prior restraint on Plaintiffs' protected religious expression under the First Amendment."  *Id.* at

¶ 323.  To determine whether this claim is ripe, the Court must use a separate standard than the *Williamson* finality rule.  *See Stockham Interests, LLC v. Borough of Morrisville*, No. 08-3431, 2008 U.S. Dist. LEXIS 93152, at *13-14 (E.D. Pa. Nov. 12, 2008)("the Third Circuit has never subjected an 'as applied' free speech claim to the finality rule").

The ripeness inquiry of a Free Speech claim requires a court to consider the following factors: (1) "the parties are in a 'sufficiently adversarial posture to be able to present their positions vigorously,'" (2) "the facts of the case are 'sufficiently developed to provide the court with enough information on which to decide the matter conclusively,'" and (3) "a party is 'genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one.'" *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433-34 (3d Cir. 2003)).  Speech regulations often pose special difficulties for parties wishing to a present a live controversy, advanced in a "clean-cut and concrete form," *see Renne v. Geary*, 501 U.S. 312, 322 (1991) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). Therefore, First Amendment challenges require relaxation of the ripeness inquiry, for "unconstitutional statutes or ordinances tend to chill protected expression among those who forbear speaking because of the law's very existence." *Peachlum*, 333 F.3d at 435.

Here, Plaintiffs Free Speech claim clearly meets the relaxed ripeness inquiry.  As to the second and third factors, I have already determined, albeit in a different context, that Plaintiffs have suffered an immediate injury and that the record is sufficiently developed to assist the Court in adjudicating Plaintiffs' claims.  Consistent with those findings, I find here, that Plaintiffs are genuinely aggrieved by the alleged actions of Defendants, and that the facts of this case are substantially developed such that this Court has sufficient

information to adjudicate Plaintiffs' Free Speech claim. Finally, as to the first factor, I find that the parties are "sufficiently adversarial," particularly since Plaintiffs allege that Defendants harbor hostility towards the ultra-Orthodox Jewish faith. *See* Compl., ¶ 257. Furthermore, because Plaintiffs' non-First Amendment claims are intertwined with their Free Speech claim, judicial economy concerns dictate that they all be handled together in one proceeding. *See Peachlum*, 333 F.3d at 440 n.11.

### D.  State Law Claims

The bulk of Defendants' ripeness arguments focuses on Plaintiffs' federal claims. As to Plaintiffs' state law based claims, Defendants argue that because the federal claims are not ripe, this Court should decline to exercise supplemental jurisdiction over the remaining state claims, i.e., Count IX (Action in Lieu of Prerogative Writ); Count X (New Jersey Law against Discrimination); and Count XI (New Jersey Constitution, Article 1, ¶¶ 1, 3). Because I find Plaintiffs federal claims are ripe, I will exercise pendant jurisdiction over Plaintiffs' state law claims.

Finally, aside from their ripeness arguments, Defendants contend, in a cursory manner, that Plaintiffs' prerogative writ claim, i.e., Count IX, should be dismissed for failure to exhaust administrative remedies, because Plaintiffs have not sought a variance. Plaintiffs' only response is that because they are mounting a facial challenge to the Zoning Ordinance, they are exempted from applying for a variance before filing suit.[12]

It is well-settled that in New Jersey, a landowner who wishes to challenge the validity of an ordinance as applied must exhaust administrative remedies by seeking a variance before initiating an action at law. *Griepenburg v. Township of Ocean*, 220 N.J.

---

[12]     I stress that neither party briefed this issue adequately.

239, 260-61 (2015). New Jersey Court Rule 4:69-5 imposes a duty to exhaust administrative remedies before initiating actions at law "[e]xcept where it is manifest that the interest of justice requires otherwise." This requirement is "a rule of practice designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts." *Brunetti v. Borough of New Milford*, 68 N.J. 576, 588 (1975). Hence, there is "a strong presumption favoring the requirement of exhaustion of remedies." *Griepenburg,* 220 N.J. at 261 (citations and quotations omitted).

Whether a plaintiff must exhaust administrative remedies by seeking a variance generally turns on whether the plaintiff is challenging a zoning ordinance "as-applied" to particular property or otherwise seeking to invalidate the ordinance in its entirety. *See Deal Gardens, Inc. v. Board of Trustees*, 48 N.J. 492, 496-98 (1967). As to the latter, invalidation of an ordinance in its entirety commonly presents a question of law that does not involve administrative expertise or review before it is adjudicated. As such, exhaustion is not required. *See Reeves v. Twp. of Marlboro*, No. A-2781-10T4, 2012 N.J. Super. Unpub. LEXIS 1398, at *11 (App. Div. Jun. 18, 2012). However, when the landowner only claims that an ordinance is "arbitrary and unreasonable in its application to the owner's land, and relief in that circumstance may be obtained from a local board of adjustment, the trial court should ordinarily decline to adjudicate an attack upon the ordinance until after the owner has exhausted his remedy to seek relief from the local board of adjustment[.]" *Conlon v. Bd. of Pub. Works, Paterson*, 11 N.J. 363, 370 (1953).

Nevertheless, "[e]xceptions are made when the administrative remedies would be futile, when irreparable harm would result, when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision." *N.J. Civil Serv.*

*Ass'n v. State*, 88 N.J. 605, 613 (1982) (citing *Garrow v. Elizabeth Gen. Hosp. & Dispensary*, 79 N.J. 549, 561 (1979)).

Here, under New Jersey law, Plaintiffs must exhaust their prerogative writ claim by first seeking a variance before filing suit.  In Count IX, Plaintiffs allege that "[t]he actions of the Board were arbitrary, capricious, unreasonable and contrary to law."  Compl., ¶ 326.  Plaintiffs further complain that "[t]he decisions of the Board were based on conclusions contrary to the weight of the evidence adduced at public hearings and the Board failed to place its reasons for the denial on the record."  *Id.* at ¶ 336.  Due to the nature of these allegations, consistent with my prior findings, *see supra*, regarding Plaintiffs' federal claims, this prerogative writ similarly challenges the Zoning Ordinance as applied.  Accordingly, Plaintiffs' argument on the exhaustion issue, i.e., that they are facially challenging the Zoning Ordinance, is misplaced.

Next, as to the question whether Plaintiffs are exempted from exhaustion, I have no basis to find, on this record, that Plaintiffs would not be compelled to apply for a variance.  Indeed, Plaintiffs did not present any evidence that either irreparable harm would result, or that an overriding public interest calls for a prompt judicial decision.  In fact, Plaintiffs do not make any of those exemption-related arguments as to Count IX.  Therefore, without demonstrating any basis for exemption, Plaintiffs must proceed with the variance process before filing their prerogative writ claim in court.  I note that as to the other state law claims, which are premised upon religious discrimination, exhaustion is not required under state law, and similarly, no exhaustion requirements exist for the federal claims.  Those claims will proceed here.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. The Court finds that Plaintiffs' federal claims, i.e., Counts I-VIII, are ripe, and with respect to state law claims asserted in Counts X and XI, the Court will exercise supplemental jurisdiction. However, Plaintiffs must exhaust their administrative remedies as to Count IX, action in lieu of prerogative writ; therefore, Count IX is dismissed without prejudice.


Date:   February 16, 2017                    /s/  Freda L. Wolfson_____
                                             FREDA L. WOLFSON, U.S.D.J.

32